1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11 | IRVIN T. TATUM,                          )   No. C 10-0418 LHK (PR)
                                              )
12 |              Plaintiff,                   )   ORDER GRANTING DEFENDANTS'
                                              )   MOTION FOR SUMMARY JUDGMENT
13 |    vs.                                    )
                                              )
14 | T. PUGET, et al.,                        )
                                              )
15 |              Defendants.                  )
                                              )
16 | _____          )   (Docket No. 49)

17        Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42

18 U.S.C. § 1983 against various Pelican Bay State Prison ("PBSP") officials, including Defendants

19 T. Puget, D. Bradbury, R. Cox, and D. Rothchild.  Plaintiff maintains Defendants denied him due

20 process by placing him in administrative segregation without the necessary procedural

21 protections.[1]

22        Defendants have moved for summary judgment, arguing that there is no genuine issue of

23 material fact, there was no violation of Plaintiff's due process rights, and that they are entitled to

24 qualified immunity.  *See* Docket no. 49.  Plaintiff filed his opposition.  Defendants filed their

25 _____

26        [1] The Court dismissed without prejudice other non-related claims in Plaintiff's complaint
   pursuant to Federal Rule of Civil Procedure 20(a)(2), *see* Docket no. 5, and granted Plaintiff's
27 motion for voluntary dismissal of his claims against Defendants Uptergrove, James, Cook, Hirai,
   and Marvin, *see* Docket no. 42.
28

1   reply.  Having carefully considered the papers submitted, the Court hereby GRANTS

2   Defendants' motion for summary judgment for the reasons set out below.

3                                    **BACKGROUND**[2]

4          On March 1, 2007, Plaintiff had a physical altercation with his cell-mate, inmate E.

5   Johnson.  (Compl. at 6; Marvin Decl. ¶ 7(c).)  An officer who arrived at the scene observed

6   Johnson with "cuts and lacerations on both the left and right side of his head, bruised and

7   swollen areas to both eyes, [and] active bleeding from the left eye, cheek and lip areas."  (Marvin

8   Decl., Ex. G-8.)  As a result, Plaintiff was removed from general population and placed in

9   administrative segregation ("ad-seg").  On the same day, Plaintiff was issued a serious rules

10  violation report ("RVR") for "attempted murder" of an inmate.  (*Id.* at Ex. G-2.)  The hearing for

11  the attempted murder charge was postponed on March 13, 2007, at Plaintiff's request, pending

12  resolution of possible criminal prosecution.  (*Id.* at Ex. G-7.)  On July 13, 2007, Plaintiff revoked

13  his request for postponement, and the hearing was scheduled accordingly.[3]  (*Id.*)  On August 30,

14  2007, Plaintiff appeared at a prison disciplinary hearing.  (*Id.*)  Plaintiff was found guilty, but

15  received no forfeiture of credits as time constraints were exceeded.[4]  (*Id.* at G-8.)  Plaintiff was

16  referred to the Institutional Classification Committee[5] ("ICC") for placement in the security

17  housing unit ("SHU").  (*Id.*)  The ICC ultimately assessed Plaintiff with a 26-month determinate

18  SHU term for the serious rule violation.  (*Id.* at G-1.)

19         On March 7, 2007, Plaintiff was caught sending out two letters in which he wrote that he

20  would kill a guard.  (Marvin Decl. ¶ 7(d).)  After a disciplinary hearing on March 26, 2007,

21  ────────────────

22      [2] The following facts are undisputed unless otherwise indicated.

23      [3] According to the complaint, the Del Norte County District Attorney's Office issued a
    complaint charging Plaintiff with "battery" based on the information provided by the prison, but
24  later dismissed the charge with prejudice.  (Compl. at 6.)

25      [4] Forfeiture of credits as a penalty will not be allowed if prison officials do not adhere to time
    limitations for providing notice and scheduling hearings for rule violations.  Cal. Cod Reg. tit.
26  15, § 3320(f).

27      [5] The ICC makes administrative decisions concerning an inmate's housing, transfers, program
28  participation, and custody designation.  Cal. Cod Reg. tit. 15, § 3375(c).

1  Plaintiff was found guilty of making "threats of force of violence against a public official" and

2  assessed 150 days forfeiture of credit.  (*Id.* at Ex. H-5.)  He was also assessed an additional five-

3  month determinate SHU term by ICC.  (*Id.* at Ex. H-1.)

4        On August 21, 2008, Plaintiff was given notice that he would appear before the ICC for

5  his pre-release review[6], and that the committee would decide whether to retain him in the SHU

6  upon termination of his current SHU term.  (Marvin Decl. ¶ 6, Ex. C-1.)  The notice also

7  advised Plaintiff that he met the criteria for an indeterminate SHU term, under departmental

8  policy established by an August 26, 2002 memorandum, based on his disciplinary history of

9  having four prior SHU terms for rules violations.  (*Id.*)  Lastly, Plaintiff was advised that he

10  would have an opportunity to be heard by the ICC.   (*Id.*)  Defendant Puget signed the notice

11  which indicated that he served Plaintiff with the notice on August 21, 2008.  (*Id.*)  Plaintiff

12  refused to sign the form at the time of service.  (*Id.*)

13        On August 27, 2008, Plaintiff appeared before the ICC, with Defendants Puget, Bradbury

14  and Cox participating as the committee members.  (Compl. at 9; Marvin Decl. ¶ 7, Ex. D.)  The

15  committed noted Plaintiff's four prior determinate SHU terms for trafficking drugs, participating

16  in a riot, attempting to murder his cell-mate, and threatening to murder a correctional officer.[7]

17  (*Id.*)  Plaintiff's response was, "I cannot change my disciplinary history." (*Id.*)  Plaintiff

18  requested a transfer away from PBSP.  (*Id.*)  The ICC concluded that Plaintiff still posed an

19  "unacceptable risk to the safety of others and institutional security if he were released to the GP

20  [general population] at this time" due to his "propensity for violence and wanton disregard for

21  CDCR's rules and regulations," and decided to retain Plaintiff in the SHU for an indeterminate

22

23     [6] Between thirty and sixty days before an inmate's minimum eligible release date ("MERD")
24  from the SHU for a determinate term, an ICC convenes for a pre-release hearing to evaluate
    whether the inmate will continue to threaten safety and security after the determinate SHU term
25  ends. (Marvin Decl. ¶ 4.)  Plaintiff's MERD was set for October 16, 2008. (Compl. at 9.)

26     [7] On December 20, 2001, Plaintiff was caught smuggling heroine into California State Prison
    - Sacramento ("CSP"), for which he received a serious rule violation report for "drug trafficking"
27  and assessed an eight-month determinate SHU term. (Marvin Decl. ¶ 7(a).)  On March 26, 2006,
    Plaintiff participated in a riot at CSP, a serious rule violation, for which he was assessed a three-
28  month determinate SHU term. (*Id.* at  ¶ 7(b).)

1   term following the expiration of his current determinate SHU term.  (*Id.*)  Plaintiff's

2   indeterminate term in the SHU was endorsed and approved by Defendant Rothchild, as a

3   classification staff representative, after Defendant Rothchild reviewed the ICC's decision and

4   relevant information.  (Marvin Decl. ¶ 9, Ex. J-1.)

**MOTION FOR SUMMARY JUDGMENT**

5

6   I.   <u>Legal Standard</u>

7        Summary judgment is proper where the pleadings, discovery and affidavits demonstrate

8   that there is "no genuine issue as to any material fact and that the moving party is entitled to

9   judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect

10  the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute

11  as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

12  verdict for the nonmoving party.  *Id.*

13       The party moving for summary judgment bears the initial burden of identifying those

14  portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

15  issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving

16  party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no

17  reasonable trier of fact could find other than for the moving party.  But on an issue for which the

18  opposing party will have the burden of proof at trial, the moving party need only point out "that

19  there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

20       Once the moving party meets its initial burden, the nonmoving party must go beyond the

21  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

22  genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over

23  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."

24  *Anderson*, 477 U.S. at 248.  It is not the task of the Court to scour the record in search of a

25  genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The

26  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that

27  precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the

28  moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

1    II.    Evidence Considered

2          A district court may only consider admissible evidence in ruling on a motion for

3    summary judgment. *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th

4    Cir. 2002).     In support of Defendants' motions for summary judgment, a declaration has been

5    filed by Correctional Counselor D. Marvin, with supporting exhibits.

6          Plaintiff verified his complaint filed on January 15, 2010, by signing it under "penalty of

7    perjury." Plaintiff submitted his opposition on August 29, 2011. Plaintiff's allegations in his

8    opposition are not verified in conformity with 28 U.S.C. § 1746 because Plaintiff does not assert

9    any of these statements under "penalty of perjury." Therefore, for the purposes of this Order, the

10   Court will treat Plaintiff's original complaint as an affidavit in opposition to Defendants' motion

11   to dismiss and motion for summary judgment under Rule 56 of the Federal Rules of Civil

12   Procedure. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

13   III.   Analysis

14          The Ninth Circuit held that California statutes and prison regulations create a liberty

15   interest in freedom from administrative segregation, *see Toussaint v. McCarthy*, 801 F.2d 1080,

16   1098 (9th Cir. 1986), and spelled out the process due before a prisoner may be segregated for

17   administrative reasons, see id. at 1100. *Toussaint* requires prison officials to comply with the

18   following procedures when they initially determine whether a prisoner is to be segregated for

19   administrative reasons to satisfy due process: (1) they must hold an informal nonadversary

20   hearing within a reasonable time after the prisoner is segregated,[8] (2) the prisoner must be

21   informed of the charges against him or the reasons segregation is being considered, and (3) the

22   prisoner must be allowed to present his views. *See Toussaint*, 801 F.2d at 1100.[9] Due process

23   does not require detailed written notice of charges, representation by counsel or counsel-

24

25          [8] While a hearing held within 72 hours of segregation constitutes a "reasonable time," it is
26   unsettled whether due process would tolerate a more lengthy delay. *See Toussaint*, 801 F.2d at
     1100 n.20.
27
             [9] The official charged with deciding to place an inmate in administrative segregation must be
28   the official to whom the inmate presents his views. *See Toussaint v. McCarthy*, 926 F.2d 800,
     803 (9th Cir. 1990), *cert. denied*, 502 U.S. 874 (1991).

1    substitute, an opportunity to present witnesses, a written decision describing the reasons for

2    placing the prisoner in administrative segregation or disclosure of the identity of any person

3    providing information leading to placement of a prisoner in administrative segregation.  *See id.*

4    at 1100-01.  *Accord Wilkinson v. Austin*, 545 U.S. 209, 228-29 (2005) (determining that

5    prisoners are constitutionally entitled only to the informal, non-adversary procedures set forth in

6    *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1 (1979), and *Hewitt*

7    *v. Helms*, 459 U.S. 460 (1983), prior to assignment to "supermax" facility).

8          In *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), the Supreme Court held that

9    disciplinary proceedings do not satisfy due process requirements unless there is "some evidence"

10   in the record to support the findings of the prison disciplinary board.  The Ninth Circuit requires

11   that "some evidence" also support a decision to place an inmate in segregation for administrative

12   reasons.  *See Toussaint*, 801 F.2d at 1104.  The standard is met if there was some evidence from

13   which the conclusion of the administrative tribunal could be deduced.  *Id.* at 1105 (citing *Hill*,

14   472 U.S. at 455).  Ascertaining whether the standard is satisfied does not require examination of

15   the entire record, independent assessment of the credibility of witnesses or weighing of the

16   evidence.  *See id.*  Instead, the relevant question is whether there is any evidence in the record

17   that could support the conclusion reached.  *See id.*

18         The Court finds that Plaintiff has failed to raise a triable issue as to whether Defendants

19   violated his right to due process in imposing an indeterminate SHU term.  To survive a summary

20   judgment motion, Plaintiff must raise a triable issue of fact as to whether Defendants denied him

21   the procedural protections under *Toussaint*.  Viewing the evidence in the light most favorable to

22   Plaintiff, there is no triable issue because Defendants did not deprive him of any of the

23   constitutional protections under *Toussaint*.

24         Plaintiff claims that Defendants imposed an indeterminate SHU term "without charging

25   him or providing him with a written notification of a specific rule he violated that warrant[ed]

26   additional punishment in SHU."  (Compl. at 9-10.)  Plaintiff claims that Defendant Rothchild is a

27   "classification staff representative (CSR)... who sanctioned for Defendants... to illegally house

28   Plaintiff in the SHU beyond the expiration of his initial SHU term to punish Plaintiff for prior

1  SHU offense that he already served." (*Id.* at 10.)

2      First of all, it appears that Plaintiff is confusing the greater procedural protections to

3  which he would be entitled for a disciplinary matter with the minimum protections under

4  *Toussaint* for administrative segregation.[10]  On August 21, 2008, Plaintiff was provided notice

5  that he would appear before the ICC for his pre-release review on August 28, 2007, at which

6  time the committee would consider his disciplinary history and decide whether Plaintiff

7  continues to pose a threat to the safety of others and the security of the institution.  (Marvin

8  Decl. ¶ 6, Ex. C-1.)  The hearing was not for a disciplinary matter, but a non-adversarial hearing

9  for the purposes of determining if administrative segregation was appropriate.  As such,

10 *Toussaint* requires that Defendants hold the hearing within a reasonable time; that Plaintiff be

11 informed of the charges against him or the reasons segregation is being considered; and that

12 Plaintiff be allowed to present his views.  *See Toussaint*, 801 F.2d at 1100.  With respect to the

13 first requirement, it is undisputed that Plaintiff was already in the SHU, serving a  determinate

14 term for his last serious rule violation.  (Compl. at 9; Marvin Decl., Ex. G-1.)  Secondly, Plaintiff

15 was clearly informed of the reasons that segregation was being considered: the August 21, 2008

16 notice informed him that he met the criteria for an indeterminate SHU term, under departmental

17 policy established by an August 26, 2002 memorandum, based on his disciplinary history of

18 having four prior SHU terms for rules violations.  *See supra* at 2-3.  Lastly, Plaintiff was

19 permitted to present his views at the hearing, and he was informed of his right to do so in

20 advance.  *Id.* at 3.

21      Furthermore, there is no dispute with respect to the sufficiency of the record supporting

22 the decision of the ICC to retain Plaintiff in the SHU for an indeterminate term.  Plaintiff does

23 not challenge the fact that he suffered the four specific rules violations upon which the ICC

24
_____

25     [10] Disciplinary segregation cannot be imposed without due process, *i.e.*, without the
procedural requirements of *Wolff v. McDonnell*, 418 U.S. 539 (1974).  *Wolff* established five
26 constitutionally-mandated procedural requirements for disciplinary proceedings: (1) a written
notice of the charges to enable the inmate to prepare a defense, *id.* at 564; (2) at least 24 hours
27 after the notice to prepare for the hearing, *id.*; (3) a written statement as to the evidence relied on
and reasons for the disciplinary action, *id.*; (4) the right to call witnesses and present
28 documentary evidence in his defense, *id.* at 566; and (5) assistance of a fellow inmate or staff
where inmate is illiterate or the issues are complex, id. at 570.

1   based their decision.  *See supra* at 3.  He in fact stated during the ICC hearing that he "[could

2   not] change [his] disciplinary history." *Id.*  Accordingly, there was clearly "some evidence" to

3   support the ICC's decision.  *See Toussaint*, 801 F.2d at 1104.

4          In opposition, Plaintiff asserts that he did not have notice of the August 26, 2002

5   memorandum which made him eligible for retention in the SHU.  Defendants have submitted a

6   copy of the memorandum in support of their motion for summary judgment.  (*See* Marvin Decl.,

7   Ex. B-1.)  According to the memorandum, its instruction is based "within the parameters of the

8   California Code of Regulations, Title 15, Section 3341.5(c), which states, 'An inmate whose

9   conduct endangers the security of others or the security of the institution shall be housed in a

10  SHU.'" (Marvin Decl., Ex. B-1.)  Defendants contend that the section also states that an inmate

11  may be retained in the SHU beyond the expiration of a determinate term if a classification

12  committee determines that continuance in the SHU is needed because, among other reasons,

13  release of the inmate would endanger safety and security.  (Reply at 5, citing Cal. Code Regs. tit.

14  15, § 3341.5(c)(3).)  Plaintiff himself cites to § 3341.5 in his complaint, (*see* Compl. at 24),

15  which indicates that he at least had notice of the relevant section upon which the memorandum

16  was based.

17         Lastly, Plaintiff presents evidence in opposition that California's Office of Administrative

18  Law ("OAL") determined that the August 26, 2002 memorandum was an "underground

19  regulation" because the memorandum had not first proceeded through the administrative

20  procedures established by California's Administrative Procedures Act.  (Oppo. at 36.)

21  Defendants argue that the OAL's determination is ultimately irrelevant with respect to the

22  constitutional issue in this action: whether Plaintiff received federal due process before being

23  retained for an indeterminate term in the SHU. (Reply at 7.)  Defendants are correct.  Plaintiff

24  ultimately has failed to show that Defendants denied him the procedural protections required

25  under *Toussaint* in placing him in the SHU for an indeterminate term.  *See supra* at 7.  The fact

26  that a prisoner may have been placed incorrectly in administrative segregation does not raise a

27  due process issue.  The Constitution demands due process, not error-free decision-making.  See

28  Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868

(5th Cir. 1983).

Accordingly, Defendants are entitled to judgment as a matter of law on this claim.  *See Celotex Corp.*, 477 U.S. at 323.

A.   Qualified Immunity

Defendants also claim qualified immunity, but because the Court has found no constitutional violation, a qualified immunity analysis is not necessary.

## CONCLUSION

1.   Defendants T. Puget, D. Bradbury, R. Cox, and D. Rothchild's motion for summary judgment (Docket no. 49) is GRANTED as to all claims.  Judgment shall be entered in favor of Defendants.

2.   Remaining Defendants M. Cook, J. Hirai, and D. Marvin were DISMISSED from this action pursuant to the Court order granting Plaintiff's motion for voluntary dismissal.  (*See* Docket no. 42.)

3.   The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED:  3/8/12

LUCY H. KOH
United States District Judge